USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1082 SHEREE A. CARTER, Plaintiff, Appellee, v. STATE OF RHODE ISLAND, ET AL., Defendants, Appellants.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________  ____________________ Cyr, Boudin and Lynch, Circuit Judges. ______________  ____________________ James R. Lee, Assistant Attorney General, with whom Jeffrey B. _____________ __________ Pine, Attorney General, was on brief for appellants. ____ George Carvalho, with whom Patrick J. Quinlan and George E. ________________ ___________________ _________ Babcock were on brief for appellee. _______  ____________________ October 18, 1995  ____________________ CYR, Circuit Judge. Appellee Sheree A. Carter, a state CYR, Circuit Judge. _____________ prison guard, filed suit against the State of Rhode Island, eight of her supervisors or superior officers, and her union, alleging race and gender discrimination. Four individual defendants, among the eight individual defendants who initiated this inter- locutory appeal, challenge a district court order disallowing their "qualified immunity" defenses at summary judgment. We dismiss their appeal, for lack of appellate jurisdiction.  I I BACKGROUND1 BACKGROUND __________ The Rhode Island Department of Corrections hired Carter as a prison guard in October 1990. Her superior officers and supervisors embarked on a prolonged campaign of workplace harass- ment in April 1991. The work environment was marked by (i) several disciplinary measures against Carter based on infractions for which defendants had never disciplined white male guards, (ii) especially undesirable or dangerous work assignments made without regard to her seniority and class ranking, and failure to accord "serious consideration" to her application for promotion, (iii) repeated racial slurs and sexual threats anonymously directed against Carter in telephone calls at work and at her home, and in graffiti posted at or near her work station, (iv) failure to address her repeated complaints about ongoing harass-  ____________________ 1The material facts are related in the light most favorable to Carter, the party resisting summary judgment. See Hegarty v. ___ _______ Somerset County, 53 F.3d 1367, 1368 n.1 (1st Cir. 1995).  _______________ 2 ment, amounting to implicit condonation, and (v) defamatory comments to the press relating to Carter's discrimination com- plaints.  Carter commenced suit in federal district court in August 1993, alleging, inter alia, that defendants violated 42 _____ ____ U.S.C. 1983 by infringing her constitutional right to be free from race and gender discrimination under the Fifth and Four- teenth Amendments to the United States Constitution.2 She  ____________________ 2Only the ruling denying summary judgment on the 1983 claims is before us on appeal. An amended complaint additionally alleged civil rights claims under 42 U.S.C. 1981 (race-based discrimination only) and 1985, pendent state-law claims under ____ the Rhode Island Whistleblower Protection Act, see R.I. Gen. Laws ___ 28-14-18 (1994), and common law tort claims for defamation and intentional infliction of emotional distress. Later, Carter was allowed to amend the complaint again by including a Title VII claim, see 42 U.S.C. 2000e-2(a)(1), to conform to the proffered ___ evidence. Defendants moved for summary judgment on all claims, based on their qualified immunity defenses to the 1981, 1983 and 1985 claims. The district court denied summary judgment to all eight defendants on the Title VII claims, finding trialworthy issues of material fact. See Carter v. State of Rhode Island, No. 93- ___ ______ _______________________ 0447B, slip op. at 6-7, 18-20 (D.R.I. Nov. 9, 1994) (Report and Recommendation). The court also dismissed the 1985 claims against all eight defendants because Carter failed to adduce sufficient evidence to generate a trialworthy issue as to the existence of a "conspiracy." Id. at 15-17, n.47. Finally, ___ except for the defamation claim against "supervisory" defendant Vose, the court denied all motions for summary judgment on the state-law claims. Id. at 25-27.  ___ Though not at issue in this interlocutory appeal, we note an apparent inconsistency between the district court order and the memorandum explaining its rationale; viz., there is no foundation in the memorandum and order for the district court's decision to dismiss the 1981 claims against the four "supervisory" defen- dants. The court dismissed the 1981 claims against the "union" ___ _____ defendants because Carter had adduced insufficient evidence that __________ the union intentionally or purposefully discriminated against _____ Carter by selectively invoking a union policy not to investigate a union member's complaints while the complainant is receiving workers' compensation. Id. at 11-13. On the other hand, there ___ is no discussion of the 1981 claims against appellants, who _______ __________ 3 sought injunctive relief, compensatory and punitive damages, and attorney fees. Defendants moved for summary judgment, contending that Carter had failed to state a claim upon which relief may be granted, see Fed. R. Civ. P. 12(b)(6), (c), and asserting "quali- ___ fied immunity" from suit. The district court categorized the eleven individual defendants in three groups:  "Union" Defendants: Rhode Island Brotherhood _________________ of Correctional Officers (Union); William Bove (Union president); Kenneth Rivard (Union grievance chairman); "Supervisory" Defendants: George A. Vose, Jr. _______________________ (Director of Rhode Island Department of Cor- rections); Captain Walter Whitman (Warden; Carter's supervisor); Captain Thomas Par- tridge (Deputy Warden; Carter's supervisor); Barry Levin (the Department's Chief Supervi- sor of Employee Relations); and  "Superior Officer" Defendants: Lieutenant ______________________________ Ronald Le Clerc; Captain Kenneth Ahearn; Captain Peter Germani and Captain Ronald  ____________________ moved for summary judgment on the 1981 and 1983 claims on qualified immunity grounds only, and whose 1981 liability is in no sense derivative of, nor dependent upon, the union defendants. Nevertheless, dismissal of the 1981 claims against the "superior officer" defendants does appear to flow from the dismissal of the 1983 claims against those defendants based on insufficient evidence of discriminatory intent. On the other hand, assuming the district court correctly denied summary judgment to the four "supervisory" defendants on the 1983 claims, we discern no basis for dismissing the 1981 claims against these "supervi-sory" defendants. Although qualified immunity may be available under 1981, defendants normally are denied the pretrial benefits of an immunity defense where, as __ here, the court finds trialworthy issues pertaining to their ____ subjective state of mind, i.e., discriminatory intent. See ___ Alexis v. McDonald's Restaurants of Mass., Inc., F.3d ,  ______ _____________________________________ __ ____ __ (1st Cir. 1995) [No. 94-1554, slip op. at 13, n.7 (1st Cir. Oct. 10, 1995)]. Accordingly, the parties should explore this appar- ent inconsistency on remand. 4 Brodeur (Carter's superiors).3 The first district court ruling pertinent to the present appeal dismissed the section 1983 claims against the "superior officer" defendants because Carter's alleged right to be free from undesirable or dangerous work assignments is not protected under the Fourteenth Amendment, and the actions charged against defendants could not support a reasonable inference of discriminatory intent. Carter v. State of Rhode Island, No. 93- ______ _____________________ 0447B, slip op. at 23-24 (D.R.I. Nov. 9, 1994) (Report and Recommendation). And, as to defendant Le Clerc, who allegedly issued a public reprimand of Carter, the district court found that the allegation that white male prison guards were not subjected to similar reprimands did not provide an adequate foundation for an inference that Le Clerc was motivated by race or gender discrimination. Accordingly, the court dismissed the section 1983 claims against the four "superior officer" defen- dants.4 Second, the court ruled that Carter had stated action-  ____________________ 3After the motions for summary judgment were referred pursuant to 28 U.S.C. 636(b)(1)(B), the district court adopted the report and recommendation issued by a magistrate judge three days prior to oral argument in this appeal. Accordingly, the report and recommendation is cited throughout, as the district court ruling. 4Although eight "superior officer" and "supervisory" defen- dants are named in the notice of appeal, the order granting ________ partial summary judgment for the "superior officer" defendants is not immediately appealable, as it has not been certified pursuant to Fed. R. Civ. P. 54(b). See Hegarty, 53 F.3d at 1372; see ___ _______ ___ generally Kersey v. Dennison Mfg. Co., 3 F.3d 482, 486 (1st Cir. _________ ______ _________________ 1993).  5 able section 1983 claims against the four "supervisory" defen- dants, by alleging that she caused copies of her complaints to be sent to each thereby establishing that they knew about her ____ allegations of ongoing race and gender harassment and disparate treatment thus demonstrating a trialworthy dispute as to their intent in failing to redress her allegations. Id. at 23. ______ ___ Finally, the district court ruled that the four "supervisory" defendants were not entitled to qualified immunity from suit because the right to be free from race and gender discrimination by government officials had been "clearly established" long before 1990. Id. at 24-25. Thus, only the four "supervisory" ___ defendants [hereinafter: "appellants"] presently challenge the district court summary judgment ruling rejecting their "qualified immunity" defenses. See supra notes 2 & 4.  ___ _____ II II DISCUSSION DISCUSSION __________ A government official is not entitled to qualified immunity from suit "if the right asserted by the plaintiff was `clearly established' at the time of its alleged violation . . . [and] a reasonable official situated in the same circumstances ___ __ ___ ____ _____________ should have understood that the challenged conduct violated that ___ __________ _______ established right." Burns v. Loranger, 907 F.2d 233, 235-36 (1st _____ ________ Cir. 1990) (citing Mitchell v. Forsyth, 472 U.S. 511 (1988)) ________ _______ (emphasis added). The district court determined that "[t]he constitutional right to be free from [] invidious discrimination is so well established and so essential to the preservation of 6 our constitutional order that all public officials must be charged with knowledge of it." Carter, No. 93-0447B, slip op. at ______ 25 (D.R.I. Nov. 9, 1994).  Appellants contend in their opening brief that the district court should have proceeded to consider whether, as a matter of law, the particular conduct of each individual defen- dant was objectively reasonable. They rely heavily on an analogy to Harris v. Forklift Sys., Inc., 114 S. Ct. 367 (1993), a Title ______ ___________________ VII case. Appellants argue that Harris prescribes minimum ______ evidentiary standards for establishing the "objectively abusive" conduct needed to support a reasonable inference that a particu- lar defendant harbored an invidious discriminatory intent. As they see it, the facially innocuous or objectively reasonable conduct in which appellants, as well as the "superior officer" defendants, are alleged to have engaged (e.g., defendants "glanc- [ed]" at Carter during roll call; refused to let her drive an automobile without a license) falls far short of the "objectively abusive conduct" required under Harris (viz., repeated use of ______ explicit gender-based insults, sexual innuendo, threats, and coercion against a subordinate). This is demonstrated, appel- lants say, by the district court ruling that the evidence is insufficient to support a reasonable inference that the four "superior officer" defendants harbored a discriminatory intent. See Carter, No. 93-0447B, slip op. at 23-24 (D.R.I. Nov. 9, ___ ______ 1994); see also supra note 4. Appellants therefore insist that ___ ____ _____ they were entitled to qualified immunity because, viewing the 7 disputed evidence most favorably to Carter, reasonable officials situated in their circumstances should not have understood that ___ their conduct violated Carter's established right to be free from race or gender discrimination. See Burns, 907 F.2d at 235-36.  ___ _____ While this interlocutory appeal was pending, the United States Supreme Court decided Johnson v. Jones, 115 S. Ct. 2151 _______ _____ (1995). Displacing our longstanding precedents allowing inter- locutory appeals from virtually all rulings denying qualified immunity defenses at summary judgment, see, e.g., Unwin v. ___ ____ _____ Campbell, 863 F.2d 124, 128 (1st Cir. 1988), the Supreme Court ________ held that  a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.  Johnson, 115 S. Ct. at 2159. Recently, this court summarized the _______ Johnson message: _______ Thus, on the one hand, a district court's pretrial rejection of a proffered qualified immunity defense remains immediately appeal- able as a collateral order to the extent that it turns on a pure issue of law, notwith- standing the absence of a final judgment. On the other hand, a district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on . . . an issue of fact . . . . In such a situation, the movant must await the entry of final judgment before appealing the adverse ruling.  Stella v. Town of Tewksbury, __ F.3d ___, ___ (1st Cir. 1995) ______ _________________ [No. 95-1223, 1995 U.S. App. LEXIS 23942, at *7-8 (1st Cir. Aug. 23, 1995)]. 8 Johnson emphasized that routinely allocating fact- _______ intensive inquiries to appellate courts entails significant delays and imprudent use of scarce judicial resources, since an appellate court may have to wade through a huge, underdeveloped pretrial record to resolve especially "nebulous" factual ques- _______ tions such as a defendant's "intent." Johnson, 115 S. Ct. at ______ _______ 2158 (emphasis added).  Appellants' first reaction to Johnson is to mis- _______ characterize the summary judgment ruling in this case as a "law- based" rather than a "fact-based" denial of summary judg- ment. Johnson explicitly directs that "a district court's _______ pretrial rejection of a qualified immunity defense is not immedi- ately appealable to the extent that it turns on . . . an issue of fact . . . ." Stella, __ F.3d at ___ [No. 95-1223, 1995 U.S. ______ App. LEXIS 23942, at *7-8 (1st Cir. Aug. 23, 1995)] (citing Johnson, 115 S. Ct. at 2159). Determining the presence or _______ absence of discriminatory "intent" based on evidentiary proffers at summary judgment entails a quintessential factual assessment, _______ see Broderick v. Roache, 996 F.2d 1294 (1st Cir. 1993) (normally, ___ _________ ______ 1983 defendants are not entitled to brevis disposition on summary judgment where qualified immunity defense turns on factual determination as to their subjective intent), which is part and parcel of the "merits" dispute on the claims brought by Carter in this case.  Second, appellants contend, citing Harris, 114 S. Ct. ______ 367 (1993), that their conduct, as alleged, was not "objectively 9 abusive" as a matter of law since it was not sufficiently __ _ ______ __ ___ egregious to support a reasonable inference that appellants were motivated by race or gender discrimination:  [Such a standard] would permit any minority [worker] to allege anything against a white ________ male [supervisor] and force that white male to a jury trial. For example, a minority could  allege a violation of the equal protection clause because a white supervisor said hello, one time, to a white worker before saying it to the minority worker. That lawsuit would obviously allege the violation of a clearly established right [to be free from] racial discrimination), but it would not allege facts that violated that right. _____ Supplemental Brief for Appellants at 4. Given the evidence adduced by Carter at summary judgment, see Fed. R. Civ. P. 56(e), ___ we reject this artificial characterization as well.  For summary judgment purposes, all evidence in genuine dispute must be viewed in the light most favorable to Carter. The district court found that Carter adduced evidence that (i) each appellant had been given written notice of a pervasive, continuing campaign of workplace harassment and disparate treat- ment aimed at her, see supra pp. 2-3, (ii) each appellant had ___ _____ authority to redress her complaints, and (iii) all failed to do so. In this factual setting, Harris does appellants no good, ______ even as an analog.5  For one thing, contrary to appellants' contention, see ___ supra pp. 6-7, the Harris Court not only did not purport to _____ ______  ____________________ 5We need not test the assumption implicit in appellants' analogy; viz., that Harris, a sexual harassment case, defines the ______ boundaries of racial harassment claims as well. 10 prescribe an evidentiary threshold for establishing "objectively abusive conduct," it explicitly noted that merely because an earlier decision "present[ed] some especially egregious examples of harassment, [it did] not mark the [lower] boundary of what is actionable." Harris, 114 S. Ct at 371. Moreover, the Court ______ noted that  whether an environment is "hostile" or "abu- sive" can be determined only by looking at __ all the circumstances. These may include the ___ ___ _____________ frequency of the discriminatory conduct; its _________ severity; whether it is physically threaten- ________ __________ _________ ing or humiliating, or a mere offensive ut- ___ ___________ terance; and whether it unreasonably inter- feres with an employee's work performance. . . . [N]o single factor is required. Id. (emphasis added). The factual allegations attested to by ___ Carter, relating to conduct and context, are presumed true at this stage in the case, see supra pp. 2-3, and must be evaluated ___ _____ by the ultimate factfinder with a view to their adequacy as support for a reasonable inference on the "nebulous" element of discriminatory "intent." Thus, her factual allegations call for precisely the type of fact-intensive inquiry that Johnson coun- _______ sels against, as an inappropriate judicial exercise on interlocu- tory review.  Furthermore, the "conduct" we must deem established for summary judgment purposes in this case cannot be confined to the straitjacket designed for it by appellants (viz., "a white super- visor said hello, one time, to a white worker before saying it to ___ ____ the minority worker"). Rather, their hypothetical substantially understates the allegations actually attested to by Carter. 11 Consequently, we need not address their artificial construct. Carter expressly attests, for example, that repeated racial and gender-based epithets were directed against her, and that appellants condoned this harassment by their knowing inac- tion. We can discern no permissible ground for treating the district court ruling that there was a trialworthy issue of fact as to whether appellants harbored a discriminatory intent  as an immediately appealable law-based decision within the ___ meaning of Johnson, 115 S. Ct. at 2159.6  _______ Johnson announces a jurisdictional rule signaling a _______ new day in the First Circuit, see Stella, __ F.3d at ___ [No. 95- ___ ______ 1223, 1995 U.S. App. LEXIS 23942, at *9 (1st Cir. Aug. 23, 1995)] and not one to be undone by recasting fact-based rulings denying summary judgment on qualified immunity defenses into law- based "collateral orders" immediately appealable under Cohen v. _____ Beneficial Indus. Loan Corp., 337 U.S. 541 (1949). See Elliott ____________________________ ___ _______ v. Thomas, 937 F.2d 338, 341 (7th Cir. 1991) ("By sleight of hand ______ [defendants] can turn any defense on the merits into a defense of qualified immunity."), cert. denied, 502 U.S. 1121 (1992). The _____ ______ Johnson rule would be undermined its important aims frustrat- _______ ed, see, e.g., Johnson, 115 S. Ct. at 2158 (noting, inter alia, ___ ____ _______ _____ ____ "danger of denying justice by delay") were defendant offi-  ____________________ 6Likewise, the district court's ruling -- that there is a trialworthy issue of fact as to the existence of an "affirmative link" between appellants' acts or omissions and the alleged deprivation of civil rights, see, e.g., Figueroa v. Aponte-Roque, ___ ____ ________ ____________ 864 F.2d 947, 953 (1st Cir. 1989) is not an immediately appealable law-based decision. Johnson, 115 S. Ct. at 2159.  _______ 12 cials, spurred by the prospect of delay and the leverage it occasions, permitted to contrive insubstantial "issues of law" as grounds for interlocutory review.  III III CONCLUSION CONCLUSION __________ As Johnson precludes interlocutory review of the _______ district court order denying summary judgment on appellants' qualified immunity defenses, founded on the fact-based ruling that there was a trialworthy issue of fact as to whether appel- lants acted with discriminatory intent, their appeal is dismissed _________________________ for lack of appellate jurisdiction, with costs to appellee.  __________________________________ ____ _____ __ ________ SO ORDERED.  SO ORDERED. __ _______ 13