Glover v. Crawford                    CV-94-026-M    05/24/96
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Neil Glover,
      Plaintiff

            v.                          Civil Action No. 94-26-M

David Crawford,
      Defendant


                         O R D E R


      Defendant, through the Office of the Attorney General, has
renewed his trial motion for judgment as a matter of law on the
dubious proposition that a jury's comment in an unsolicited note
to the court during deliberations (related to an impending
deadlock) should be construed as a special verdict entitling him
to qualified immunity as a matter of law.  The court disagrees.
In any event, defendant waived his right (if any) to rely on the
contents of the jury's note as a "special verdict" when defense
counsel failed, prior to the jury's dismissal, to move the court
to submit a special question designed to establish, with the
requisite and customary indicia of clarity and reliability
associated with verdicts, the jury "finding" that they now
assert.

## Discussion

An extended review of the facts of this case is not necessary. It is sufficient to note that plaintiff claims defendant, a New Hampshire State Trooper, arrested him for disorderly conduct and public drunkenness during an annual motorcycle weekend event, without probable cause, and later intervened to thwart his release on bail and to effect his further detention for several hours in "protective custody" (allegedly, because plaintiff was inebriated), again without probable cause. Plaintiff's version of the relevant facts differed markedly from defendant's version, and the jury could not resolve those discrepancies.

The facts pertinent to the pending motion are as follows. On January 11, 1996, after the jury had begun its deliberations, it submitted two written questions. After meeting with counsel to discuss an appropriate response, the court convened the parties and jury in the courtroom on the morning of January 12. The court responded to the jury's questions on the record and the jurors returned to their deliberations. At that point, defense counsel moved for a mistrial on grounds that the jury was hopelessly confused. The motion was denied.

2

Later that afternoon, the jury sent another note to the court that read:

> Judge as of 3:00 p.m., we, the jury are
> unable to reach a unanimous decision based on
> the evidence.  We would at this time like to
> be given further instructions.

The court reconvened the parties and jury in the courtroom and instructed the jury on its duty to deliberate and reach a unanimous verdict if the jurors could do so in good conscience. The jury was asked to return to the deliberation room to consider whether a unanimous verdict was attainable.  Defense counsel again moved for a mistrial on grounds of jury deadlock.  That motion was denied.

At the end of the day, the jury sent another note to the court (Question #4, document no. 46), which read:

> We, the jury believe Sergeant Crawford had
> probable cause to arrest Neil Glover for
> disorderly conduct + send him to station W.
> We are divided on the charge of intoxication.

After discussion with counsel in chambers, the court responded to the note with a written question:

> Do you believe you will be able to reach a
> unanimous verdict if you continue to
> deliberate for a reasonable time, or, are you
> satisfied that further deliberation will not
> likely lead to unanimity?

Shortly thereafter, the jury responded by note, as follows:

> We, the jury have reached a deadlock. We do
> not feel that time will change our individual
> views.

Accordingly, the parties and jury were again reconvened in the courtroom, the court declared a mistrial, and dismissed the jurors with appreciation for their efforts. Defendant's counsel stood mute; they did not object to the mistrial (no doubt because they had twice requested that result earlier). Importantly, however, they did not request the court to submit a limited special verdict question to the jury based upon the comments in the note marked Jury Question # 4. The case was subsequently scheduled for retrial.

At the final pretrial conference in chambers earlier this week, defense counsel pressed their previously rejected claim that defendant is, as a matter of law, entitled to qualified immunity. Counsel's argument is based in large measure on the jury's note, in which it stated "We the jury believe Sergeant

4

Crawford had probable cause to arrest Neil Glover for disorderly conduct . . . ."[1]

There are obvious flaws in defense counsel's position. First, the jury's note was not in response to any special question put to the jurors; it was unsolicited and related to the status of their continuing deliberations <u>at a particular point in the deliberative process</u>. The note followed the court's request that the jurors return to consider whether a unanimous verdict might be achieved, and, in context, it simply informed the court that the jury had reached an impasse. While the jury should not have disclosed the nature of the impasse then prevailing or where they stood at that point in their deliberations, it cannot be said that the deliberative process was completed. Moreover, some jurors may have "believed" (or perhaps even "agreed") that Crawford had probable cause to arrest plaintiff for disorderly

---

[1] Even if the jury's informal note were treated as a special verdict in defendant's favor relative to plaintiff's initial arrest and referral for processing, that alone might not operate to relieve defendant of liability for what plaintiff alleges was defendant's subsequent intervention, at the processing center, for the purpose of thwarting plaintiff's impending release on bail on the disorderly conduct charge and his causing plaintiff, without any basis in fact, to be detained for several more hours in the county jail in "protective custody" status on an allegedly bogus charge of public intoxication.

conduct merely for the purpose of moving the jury's discussions from the initial arrest to defendant's potential liability for plaintiff's extended detention on the allegedly fabricated intoxication charge.

The note is also unreliable as a "finding" or a "special verdict" because: (1) it was not returned with the requisite formality in open court; (2) the jurors did not state that they unanimously agreed (as opposed to "believed") that, based on a preponderance of the evidence, defendant had probable cause to arrest plaintiff for disorderly conduct;[2] (3) the court did not confirm (through the foreperson) that each juror concurred in the "verdict" or even that the jury actually intended the note to operate as a verdict, rather than simply an informative statement explaining their inability, at that particular moment, to return a verdict; and (4) plaintiff had no opportunity to have the

---

[2] The jury's comment that "We believe Sergeant Crawford had probable cause . . . ." is a long way from, for example, "We unanimously agree by a preponderance of the evidence that . . . ." Even if we were to dispense with the customary formalities associated with the return of jury verdicts, which are, of course, designed to insure clarity and reliability, in my judgment the jury's statement here was at best tentative, not final, and not made under any circumstances from which the requisite degree of clarity and certitude necessary for a proper civil verdict could be inferred.

6

individual jurors polled in open court to verify that each juror understood and intended that the note would constitute a final jury determination on the probable cause issue in compliance with the court's charge.[3]

Defense counsel point to <u>Thorpe v. Mutual of Omaha Ins. Co.</u>, 984 F.2d 541 (1st Cir. 1993) in support of their rather novel proposition that a jury's comments in notes to the court during the deliberation process are properly dissected and analyzed to glean "findings" and "verdicts" following the declaration of a mistrial, notwithstanding the complete absence of any request that a special question be put to the jury for return in the traditional manner. Simply stated, <u>Thorpe</u> provides no support for defendant's argument. In <u>Thorpe</u> the plaintiff challenged the trial judge's submission of special questions to an apparently

---

[3] The Federal Rules of Civil Procedure, unlike their criminal counterpart, do not provide for the polling of a jury as a matter of right. <u>Cf</u>. Fed. R. Crim. P. 31(d). Nevertheless, courts generally agree that, in the civil context, whether to grant a request to poll the jury is normally left to the trial court's sound discretion. <u>Santiago Hodge v. Parke Davis & Co.</u>, 909 F.2d 628, 631 n.1 (1st Cir. 1990). Following the return of a jury verdict, it is this court's practice to ask counsel if they would like the jury to be polled. The court would, of course, have followed that practice in this case and, had the jury returned a verdict or even if it had only responded to a special question, the court would have honored a request that the jury be polled.

7

deadlocked jury.  The jury in that case returned answers to the special questions.  The trial judge, after declaring a mistrial due to deadlock and dismissing the jury, then entered judgment as a matter of law based in part on the jury's formal responses to the special questions.

On appeal, the First Circuit noted that Fed. R. Civ. P. 49 permits special verdicts in lieu of general verdicts, "and while Rule 49 does not specifically address the submission of questions to a jury after a deadlock, neither does it expressly preclude this practice."  Id., at 544-45.  Because the plaintiff had not raised the issue before the district court, the court of appeals treated the matter as waived.  Nevertheless, the court made it clear that submitting special questions to a jury after a deadlock is not a clear violation of the Federal Rules.  Id. But, nowhere in Thorpe is it even hinted that a statement made casually by a jury in the form of a note to a trial judge during deliberations and related to an impending deadlock is the equivalent of a special verdict.

In this case, although they easily could have done so, defense counsel did not ask for special questions to be put to

8

the jury after deadlock; no supplemental questions were actually put to the jury; and no responses to the special verdict form which <u>was</u> submitted to the jury were returned.  Defense counsel have cited no other authority to support their claim that jury questions or notes should function as acceptable substitutes for special verdicts after a deadlock has resulted in a mistrial and the jury has been dismissed.

I decline to construe the jury's note as a "finding" or as a "special verdict" resolving the factual disputes in this case, basically because the note completely lacks the requisite formality and concomitant indicia of clarity and reliability of a special verdict.  Since the availability of a qualified immunity defense in this case depends on resolution of factual issues, those factual issues must properly be resolved by a jury, in accordance with the court's instructions.

In addition, as mentioned above, defense counsel did not request that the limited question (concerning probable cause to arrest) be put to the jury after it was deadlocked but before it was dismissed.  If defense counsel purposely made no formal request in order to later invoke the jury's note as a special

9

verdict equivalent, then they should of course be estopped from relying on the note now, because doubt (and in the court's view there is considerable doubt) about the reliability of the note's content as a <u>finding</u> by a <u>unanimous</u> jury <u>by a preponderance of the evidence</u>, in accordance with the court's <u>instructions</u>, subject to verification by the court or plaintiff through <u>polling</u>, could have been easily resolved by submission of a precise question to the jury <u>before</u> it was dismissed. Otherwise, defense counsel's inspirational but late construction of the jury's note as a special verdict equivalent must be rejected on grounds of waiver, since they failed to raise the issue before the jury was dismissed (or even <u>after</u> the jurors had been dismissed, but still remained within the court's control as an "undispersed unit."), when the question could have been resolved with a reasonable degree of certainty. <u>Putnam Resources v. Pateman</u>, 958 F.2d 448, 457 (1st Cir. 1992).

Defendant also advances other arguments to support his asserted entitlement to summary judgment or judgment as a matter of law based on qualified and absolute immunity. He suggests, for example, that his role, if any, in causing plaintiff to be detained in protective custody status due to alleged intoxication

10

was the equivalent of a prosecutor's decision to "charge" a citizen with a crime, hence entitling him to absolute immunity under the rule of <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976).[4]

The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause. <u>Santiago v. Fenton</u>, 891 F.2d 373, 383 (1st Cir. 1989) (citing <u>Beck v. Ohio</u>, 379 U.S. 89 (1964)). If at the time

---

[4] In this case the plaintiff asserts that Sergeant Crawford had no basis for believing he was intoxicated and, in fact, did not believe that he was intoxicated. Moreover, plaintiff claims that when Crawford realized that another officer was about to release plaintiff on bail (on the disorderly conduct charge), Crawford intervened and directed that plaintiff be sent to the local jail in "protective custody" based on Crawford's allegedly unfounded assertion that plaintiff was intoxicated. Plaintiff claims that, at best, Crawford's actions were arbitrary and without a reasonable basis and, quite possibly, taken simply to punish plaintiff. Defense counsel would no doubt concede that if plaintiff's allegations are true, defendant would properly be held liable.

In any event, defendant's effecting an arrest, designating plaintiff as being intoxicated, and thereby causing him to be detained for an extended period under state law is not the equivalent of a prosecutor's decision to charge someone with a crime. Rather, defendant's actions are precisely what they appear to be: a police officer's decision to take into custody and detain a citizen under color of state law. Accordingly, the critical question is whether a reasonable police officer in Sergeant Crawford's position could have believed that plaintiff was intoxicated and subject to protective custody detention under New Hampshire law. The answer to that question, again, will turn upon the jury's factual findings.

11

of plaintiff's arrest and/or at the time of his subsequent detention for alleged intoxication, the facts and circumstances within Sergeant Crawford's knowledge and of which he had reasonably trustworthy information were not sufficient to warrant a prudent officer's belief that plaintiff had committed or was committing an offense, or was intoxicated within the meaning of N.H. Rev. Stat. Ann. Ch. 172-B:3, then plaintiff would be entitled to recover under 42 U.S.C. § 1983.

Defendant does not contest the fact that plaintiff's right to be free from arrest and detention except upon probable cause was clearly established. Similarly, defendant does not deny that a reasonable officer in his position would have understood that an arrest or detention in the absence of a reasonable belief in the existence of probable cause would violate plaintiff's clearly established Fourth Amendment rights.

The evidence offered at the first trial of this matter was decidedly contradictory. A jury could reasonably return a verdict in favor of either party, depending on whose version of the facts it credits. If plaintiff and his witnesses are believed, a jury could easily determine that Sergeant Crawford

12

was not acting in good faith and that he randomly singled plaintiff out, arrested him merely to demonstrate an exercise of authority in order to facilitate control over a gathering crowd, sent him to the processing center, and later, realizing that plaintiff was about to be released on bail in the usual course, intervened in bad faith for the purpose of arbitrarily punishing plaintiff (for asserting his intent to return and contest the disorderly conduct charge) by causing him to be detained in the county jail for several hours on a fabricated allegation of intoxication.

Sergeant Crawford's entitlement to qualified immunity from liability in this case depends on whether his version of the facts or plaintiff's radically different version of the facts surrounding the arrest and detention is credited. Curiously, however, defense counsel continually (and erroneously) argue from the premise that defendant's version of the facts must necessarily be accepted as true, completely ignoring the fact that plaintiff and his witnesses dispute defendant's testimony. Plaintiff is entitled to present his version to a jury because _if_ his version of the facts is correct, liability will surely follow. Whether defendant can invoke the protections afforded by

13

a qualified immunity defense will ultimately turn upon whose account of the pertinent events the jury accepts as true. Accordingly, before this court can determine whether Sergeant Crawford is entitled to qualified immunity, a jury must first resolve the significant disputes between the parties as to the material facts.

Essentially, then, the court's rejection of defendant's qualified immunity defense is, at this stage, a "fact-based" determination. However, to the extent the court has rejected defendant's construction of the jury's note as a special verdict entitling defendant to qualified immunity as a matter of law, the decision is "law-based." See e.g. Johnson v. Jones, 115 S.Ct. 2151 (1995); Carter v. State of Rhode Island, 68 F.3d 9 (1st Cir. 1995).

## Conclusion

Defendant's Renew[ed] Motion for Judgment as a Matter of Law (document no. 48) is denied. Defendant's Motion for Ruling on Defendant's Motion for Judgment as a Matter of Law (document no. 53) is denied as moot.

Defense counsel have advised the court that they intend to file an appeal from the denial of their motion for judgment based upon qualified and absolute immunity.  The retrial of this matter is currently set for June 4, 1996.  Should an appeal be filed before that date, the trial will be continued and rescheduled after the appeal is resolved.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

May 24, 1996

cc:  Paul J. Bennett, Esq.
     Frank Bruno, Esq.
     Ann F. Larney, Esq.
     Christopher P. Reid, Esq.

15