Rhoda TANG, Plaintiff, Appellee,

v.

**STATE OF RHODE ISLAND, DEPART-
MENT OF ELDERLY AFFAIRS and
Maureen Maigret and Susan Sweet, in
their individual and official capacities,
Defendants, Appellants.**

No. 96–2320.

United States Court of Appeals,
First Circuit.

Heard June 4, 1997.

Decided Aug. 11, 1997.

Rebecca Tedford Partington, Assistant Attorney General, Providence, RI, with whom Jeffrey B. Pine, Attorney General, was on brief, for appellants.

Dennis J. Roberts II, Providence, RI, with whom Law Offices of Dennis J. Roberts II was on brief, for appellee.

Before TORRUELLA, Chief Judge, CYR, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

In the district court, Maureen Maigret and Susan Sweet moved for summary judgment, arguing that Rhoda Tang's claim against them under 42 U.S.C. § 1983 was barred by qualified immunity. The district court held that factual disputes precluded summary judgment on this issue, and Maigret and Sweet have taken an interlocutory appeal to this court. Under governing Supreme Court precedent, we are obliged to dismiss the appeal on procedural grounds.

Tang, an Asian American, has worked as a public health nutritionist at the Rhode Island Department of Elderly Affairs since 1974. In her view, the Department has discriminated against her for many years, in various respects, primarily on account of her race. The history of litigation includes a formal administrative charge by Tang of employment discrimination and a settlement of the matter in 1987, and Tang's 1989 discharge and 1992 reinstatement, which followed union-initiated arbitration.

In 1996, Tang filed the present action in district court against the Department, Maigret (former director of the Department), and Sweet (then the associate director). Tang charged that she had been discriminated against for racial and other reasons in the conditions of her employment and also had been subjected to retaliation on account of her prior complaint. Her claims were based on Title VII, 42 U.S.C. §§ 2000e–2 and 3, on 42 U.S.C. §§ 1981 and 1983, and on counterpart provisions of Rhode Island law.

After some preliminary skirmishing, Maigret and Sweet moved for summary judgment as to the section 1983 claim against them on grounds of qualified immunity. They conceded that there was a clearly established right to be free from racial discrimination. But, relying upon *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), and *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987), they argued that an objectively reasonable person would not think that the conduct attributed to them by Tang violated that right.

Some of the incidents cited by Tang as examples of racial discrimination or retaliation would strike many people as tame (for example, that she was given too many clerical tasks); others might be more serious. But Maigret and Sweet sought to narrow the focus by asserting that each was directly linked only to one or two incidents. Tang answered that factual issues, including the defendants' alleged discriminatory intent, precluded summary judgment.

In October 1996, the district court filed a memorandum and order concluding that "the [individual] defendants' motion for qualified immunity must be and is hereby deferred until completion of the trial of the plaintiff's case." The court declined to "detai[l] the allegations the parties have made" but explained: "It suffices to say that I agree with plaintiff's counsel that the vast majority of the facts are in dispute." This appeal followed.

Although Tang defends the district court's order on the merits, she also says that we have no authority to review the district court's order. The objection, couched in language taken from a recent Supreme Court case, is that "a defendant entitled to invoke a qualified immunity defense may not appeal a district court summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine issue of fact for trial.'" *See Johnson v. Jones*, 515 U.S. 304, 319–20, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995).

The Supreme Court had earlier held in *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985), that despite the ordinary requirement of finality, a denial of qualified immunity on legal grounds is immediately appealable under the collateral order doctrine. But in *Johnson*, it narrowed this opportunity by saying that an interlocutory appeal from a denial of immunity would not be permitted where the district court found that a genuine issue of material fact precluded an immediate grant of qualified immunity. 515 U.S. at 312–18, 115 S.Ct. at 2156–58. *Accord Behrens v. Pelletier,* —— U.S. ——, ——, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996).

In construing these cases, this court has spelled out what is implicit in *Johnson,* namely, that it does not help the official appealing a denial of immunity to argue that the district court erred in finding a material issue of fact. *Diaz v. Diaz Martinez,* 112 F.3d 1, 4–5 (1st Cir.1997); *Stella v. Kelley,* 63 F.3d 71, 77–78 (1st Cir.1995). True, such an error can be described as an error of law. But, as the Supreme Court made clear, *Johnson's* limitation on immediate review rests primarily on a prudential desire to avoid bringing *evidentiary* disputes to the appeals court except as part of a final judgment. *Johnson,* 515 U.S. at 312–18, 115 S.Ct. at 2156–58.

In this case, the district court did not identify specific factual issues or explain its ruling, but its reasoning probably lay along one or both of two different lines: that disputed incidents trivial in themselves might add up to something more sinister as part of a pattern, or that some of the incidents (such as the later withdrawn discharge of Tang in 1989) might not be so trivial at all. Neither theory is impossible in the abstract. *See, e.g., Carter v. Rhode Island,* 68 F.3d 9, 13 (1st Cir.1995).

Whether the evidence adduced by Tang created a material issue of fact under summary judgment standards is a different question; to decide it, we would have to describe in some detail the events cited by Tang and the inferences as to defendants' intent that might, or might not, be drawn from the episodes alleged. But this is the very type of factual dispute that *Johnson* holds to be premature so far as appellate review is concerned. Right or wrong, the district court's ruling is not subject to immediate appeal.

The defendants counter by saying that subjective intent is irrelevant to qualified immunity. They concede *arguendo* each of the few incidents directly involving them (*e.g.,* Maigret's allegedly inadequate investigation of Tang's complaint that another department employee demanded to use Tang's computer although other machines were available). But drawing upon the *Harlow–Anderson* objective test of qualified immunity, they say that no reasonable person could

regard these actions as unlawful discrimination.

We think that the *Harlow–Anderson* objective test does not automatically resolve a qualified immunity defense in favor of the defendant in a case of alleged racial discrimination or retaliation. The essence of such claims, or at least one standard version, is that official actions that might otherwise be defended as reasonable become illegitimate when taken out of racial bias or in revenge for a prior complaint. *See Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 354 (1st Cir.1995) (citing cases). To employ a wholly objective test would wipe out many, if not most, of these claims.

The objective test focuses on the reasonableness of the official's conduct independent of motive. It is rarely going to be manifestly unreasonable, judged apart from motive, to assign particular tasks to an employee, move her file cabinet, alter her parking arrangements or do most of the things of which Tang complains. But because of special constitutional or statutory protections, *some* motives can convert relatively minor slights into causes of action. *Cf. Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 & n. 8, 110 S.Ct. 2729, 2737 & n. 8, 111 L.Ed.2d 52 (1990).

An unresolved tension exists between such specific-intent torts and the objective *Harlow–Anderson* qualified immunity test.[1] That test was designed to meet, not claims of racial bias or retaliation, but rather ill-founded allegations that an official action was "malicious" or taken "in bad faith"—characterizations that defeated qualified immunity at common law. *Prosser and Keeton on Torts* § 132, at 1059–62 (5th ed.1984). In all events, the circuit courts have almost uniformly refused to apply a strictly objective test of qualified immunity in racial and retaliation cases. *See Broderick v. Roache*, 996

F.2d 1294, 1298 (1st Cir.1993); *Crawford–El*, 93 F.3d at 817 (citing cases).

The defendants strongly suggest that the failure to allow an appeal now, in a case like this one, will undercut the protection that qualified immunity is supposed to give to a government official *in a weak case* not only to avoid liability but to avoid trial itself. Of course, nothing prevents a district court from granting summary judgment for the defendants where proof of a racial or retaliatory motive is very thin. But this does not help government officials seeking an early exit where the district court thinks that factual issues remain, for, in that event, *Johnson* still bars an immediate appeal.

*Johnson* involved a factual dispute about what occurred, not an issue of motive, and its full implications for motive cases may not have been entirely apparent. *See Johnson*, 515 U.S. at 307–10, 316–18, 115 S.Ct. at 2154, 2158. Given the policies set forth in *Harlow*, 457 U.S. at 817–18, 102 S.Ct. at 2737–38, and *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40, officials arguably do need some special protection against charges of improper motive, which are easily made and which may be supported simply by an alleged remark of the defendant made when only the plaintiff was present. The problem for officials facing such lawsuits is very real.

In a few circuits, it appears that courts have responded by squeezing *Johnson* a bit and effectively granting interlocutory review of denials of qualified immunity based on alleged factual disputes about intent; but this circuit and a number of others have resisted that course.[2] More inventively, the District of Columbia Circuit, which had developed a heightened pleading standard for such motive claims, recently abandoned it in favor of imposing a "clear and convincing evidence" standard of proof. *Crawford–El*, 93 F.3d at 818, 823.

---

**1.** The Supreme Court may clarify matters next fall when it confronts a qualified immunity defense offered to a charge of retaliatory motive. *Crawford–El v. Britton*, 93 F.3d 813 (D.C.Cir. 1996) (en banc), *cert. granted,* — U.S. —, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997).

**2.** *Compare Walker v. Schwalbe*, 112 F.3d 1127, 1131–32 (11th Cir.1997) *and Blue v. Koren*, 72

F.3d 1075, 1083–84 & n. 6 (2d Cir.1995) (exercising pendent jurisdiction), *with Berdecía–Pérez v. Zayas–Green*, 111 F.3d 183, 184 (1st Cir.1997) *and Chateaubriand v. Gaspard*, 97 F.3d 1218, 1223–24 (9th Cir.1996) *and Shinault v. Cleveland County Bd.*, 82 F.3d 367, 370–71 (10th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 740, 136 L.Ed.2d 678 (1997).

Because the Supreme Court has granted review in *Crawford–El,* an answer to the quandary may be forthcoming, but we need not hazard our own guess about the outcome. In the present case, Maigret and Sweet did not ask for any special evidentiary standard to be used in the district court—but merely for summary judgment granting them qualified immunity. The district court denied it because of a perceived factual dispute, and under *Johnson* that ruling cannot be reviewed on interlocutory appeal.

*Appeal dismissed.*