USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2320 RHODA TANG, Plaintiff, Appellee, v. STATE OF RHODE ISLAND, DEPARTMENT OF ELDERLY AFFAIRS and MAUREEN MAIGRET and SUSAN SWEET, in their individual and official capacities, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Rebecca Tedford Partington, Assistant Attorney General, with whom __________________________ Jeffrey B. Pine, Attorney General, was on brief for appellants. _______________ Dennis J. Roberts II with whom Law Offices of Dennis J. Roberts _____________________ __________________________________ II was on brief for appellee. __ ____________________ August 11, 1997 ____________________ BOUDIN, Circuit Judge. In the district court, Maureen _____________ Maigret and Susan Sweet moved for summary judgment, arguing that Rhoda Tang's claim against them under 42 U.S.C. 1983 was barred by qualified immunity. The district court held that factual disputes precluded summary judgment on this issue, and Maigret and Sweet have taken an interlocutory appeal to this court. Under governing Supreme Court precedent, we are obliged to dismiss the appeal on procedural grounds. Tang, an Asian American, has worked as a public health nutritionist at the Rhode Island Department of Elderly Affairs since 1974. In her view, the Department has discriminated against her for many years, in various respects, primarily on account of her race. The history of litigation includes a formal administrative charge by Tang of employment discrimination and a settlement of the matter in 1987, and Tang's 1989 discharge and 1992 reinstatement, which followed union-initiated arbitration. In 1996, Tang filed the present action in district court against the Department, Maigret (former director of the Department), and Sweet (then the associate director). Tang charged that she had been discriminated against for racial and other reasons in the conditions of her employment and also had been subjected to retaliation on account of her prior complaint. Her claims were based on Title VII, 42 -2- -2- U.S.C. 2000e-2 and 3, on 42 U.S.C. 1981 and 1983, and on counterpart provisions of Rhode Island law. After some preliminary skirmishing, Maigret and Sweet moved for summary judgment as to the section 1983 claim against them on grounds of qualified immunity. They conceded that there was a clearly established right to be free from racial discrimination. But, relying upon Harlow v. ______ Fitzgerald, 457 U.S. 800, 819 (1982), and Anderson v. __________ ________ Creighton, 483 U.S. 635, 638-39 (1987), they argued that an _________ objectively reasonable person would not think that the conduct attributed to them by Tang violated that right.  Some of the incidents cited by Tang as examples of racial discrimination or retaliation would strike many people as tame (for example, that she was given too many clerical tasks); others might be more serious. But Maigret and Sweet sought to narrow the focus by asserting that each was directly linked only to one or two incidents. Tang answered that factual issues, including the defendants' alleged discriminatory intent, precluded summary judgment. In October 1996, the district court filed a memorandum and order concluding that "the [individual] defendants' motion for qualified immunity must be and is hereby deferred until completion of the trial of the plaintiff's case." The court declined to "detai[l] the allegations the parties have made" but explained: "It suffices to say that I agree with -3- -3- plaintiff's counsel that the vast majority of the facts are in dispute." This appeal followed. Although Tang defends the district court's order on the merits, she also says that we have no authority to review the district court's order. The objection, couched in language taken from a recent Supreme Court case, is that "a defendant entitled to invoke a qualified immunity defense may not appeal a district court summary judgment order insofar as that order determines whether or not the pretrial record sets forth a `genuine issue of fact for trial.'" See Johnson v. ___ _______ Jones, 115 S. Ct. 2151, 2159 (1995). _____ The Supreme Court had earlier held in Mitchell v. ________ Forsyth, 472 U.S. 511, 530 (1985), that despite the ordinary _______ requirement of finality, a denial of qualified immunity on legal grounds is immediately appealable under the collateral order doctrine. But in Johnson, it narrowed this opportunity _______ by saying that an interlocutory appeal from a denial of immunity would not be permitted where the district court found that a genuine issue of material fact precluded an immediate grant of qualified immunity. 115 S. Ct. at 2156- 58. Accord Behrens v. Pelletier, 116 S. Ct. 834, 842 (1996). ______ _______ _________ In construing these cases, this court has spelled out what is implicit in Johnson, namely, that it does not help _______ the official appealing a denial of immunity to argue that the district court erred in finding a material issue of fact. -4- -4- Diaz v. Diaz Martinez, 112 F.3d 1, 4-5 (1st Cir. 1997); ____ ______________ Stella v. Kelley, 63 F.3d 71, 77-78 (1st Cir. 1995). True, ______ ______ such an error can be described as an error of law. But, as the Supreme Court made clear, Johnson's limitation on _______ immediate review rests primarily on a prudential desire to avoid bringing evidentiary disputes to the appeals court ___________ except as part of a final judgment. Johnson, 115 S. Ct. at _______ 2156-58. In this case, the district court did not identify specific factual issues or explain its ruling, but its reasoning probably lay along one or both of two different lines: that disputed incidents trivial in themselves might add up to something more sinister as part of a pattern, or that some of the incidents (such as the later withdrawn discharge of Tang in 1989) might not be so trivial at all. Neither theory is impossible in the abstract. See, e.g., ___ ____ Carter v. Rhode Island, 68 F.3d 9, 13 (1st Cir. 1995). ______ ____________ Whether the evidence adduced by Tang created a material issue of fact under summary judgment standards is a different question; to decide it, we would have to describe in some detail the events cited by Tang and the inferences as to defendants' intent that might, or might not, be drawn from the episodes alleged. But this is the very type of factual dispute that Johnson holds to be premature so far as _______ -5- -5- appellate review is concerned. Right or wrong, the district court's ruling is not subject to immediate appeal.  The defendants counter by saying that subjective intent is irrelevant to qualified immunity. They concede arguendo ________ each of the few incidents directly involving them (e.g., ____ Maigret's allegedly inadequate investigation of Tang's complaint that another department employee demanded to use Tang's computer although other machines were available). But drawing upon the Harlow-Anderson objective test of qualified ______ ________ immunity, they say that no reasonable person could regard these actions as unlawful discrimination. We think that the Harlow-Anderson objective test does ______ ________ not automatically resolve a qualified immunity defense in favor of the defendant in a case of alleged racial discrimination or retaliation. The essence of such claims, or at least one standard version, is that official actions that might otherwise be defended as reasonable become illegitimate when taken out of racial bias or in revenge for a prior complaint. See Alexis v. McDonald's Restaurants of ___ ______ __________________________ Mass., Inc., 67 F.3d 341, 354 (1st Cir. 1995) (citing cases). ___________ To employ a wholly objective test would wipe out many, if not most, of these claims. The objective test focuses on the reasonableness of the official's conduct independent of motive. It is rarely going to be manifestly unreasonable, judged apart from motive, to -6- -6- assign particular tasks to an employee, move her file cabinet, alter her parking arrangements or do most of the things of which Tang complains. But because of special constitutional or statutory protections, some motives can ____ convert relatively minor slights into causes of action. Cf. ___ Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 & n.8 _____ ____________________________ (1990). An unresolved tension exists between such specific- intent torts and the objective Harlow-Anderson qualified ______ ________ immunity test.1 That test was designed to meet, not claims of racial bias or retaliation, but rather ill-founded allegations that an official action was "malicious" or taken "in bad faith"--characterizations that defeated qualified immunity at common law. Prosser and Keeton on Torts 132, ___________________________ at 1059-62 (5th ed. 1984). In all events, the circuit courts have almost uniformly refused to apply a strictly objective test of qualified immunity in racial and retaliation cases. See Broderick v. Roache, 996 F.2d 1294, 1298 (1st Cir. 1993); _____________ ______ Crawford-El, 93 F.3d at 817 (citing cases).  ___________ The defendants strongly suggest that the failure to allow an appeal now, in a case like this one, will undercut the protection that qualified immunity is supposed to give to  ____________________ 1The Supreme Court may clarify matters next fall when it confronts a qualified immunity defense offered to a charge of retaliatory motive. Crawford-El v. Britton, 93 F.3d 813 ___________ _______ (D.C. Cir. 1996) (en banc), cert. granted, 65 U.S.L.W. 3817 _____________ (1997). -7- -7- a government official in a weak case not only to avoid ________________ liability but to avoid trial itself. Of course, nothing prevents a district court from granting summary judgment for the defendants where proof of a racial or retaliatory motive is very thin. But this does not help government officials seeking an early exit where the district court thinks that factual issues remain, for, in that event, Johnson still bars _______ an immediate appeal. Johnson involved a factual dispute about what occurred, _______ not an issue of motive, and its full implications for motive cases may not have been entirely apparent. See Johnson, 115 ___ _______ S. Ct. at 2154, 2158. Given the policies set forth in Harlow, 457 U.S. at 817-18, and Anderson, 483 U.S. at 641, ______ ________ officials arguably do need some special protection against charges of improper motive, which are easily made and which may be supported simply by an alleged remark of the defendant made when only the plaintiff was present. The problem for officials facing such lawsuits is very real. In a few circuits, it appears that courts have responded by squeezing Johnson a bit and effectively granting _______ interlocutory review of denials of qualified immunity based on alleged factual disputes about intent; but this circuit and a number of others have resisted that course.2 More  ____________________ 2Compare Walker v. Schwalbe, 112 F.3d 1127, 1131-32 _______ ______ ________ (11th Cir. 1997) and Blue v. Koren, 72 F.3d 1075, 1083-84 & ___ ____ _____ n.6 (2d Cir. 1995) (exercising pendent jurisdiction) with ____ -8- -8- inventively, the District of Columbia Circuit, which had developed a heightened pleading standard for such motive claims, recently abandoned it in favor of imposing a "clear and convincing evidence" standard of proof. Crawford-El, 93 ___________ F.3d at 818, 823. Because the Supreme Court has granted review in Crawford-El, an answer to the quandary may be forthcoming, ___________ but we need not hazard our own guess about the outcome. In the present case, Maigret and Sweet did not ask for any special evidentiary standard to be used in the district court--but merely for summary judgment granting them qualified immunity. The district court denied it because of a perceived factual dispute, and under Johnson that ruling _______ cannot be reviewed on interlocutory appeal. Appeal dismissed.  ________________  ____________________ Berdec a-P rez v. Zayas-Green, 111 F.3d 183, 184 (1st Cir. ______________ ___________ 1995) and Chateaubriand v. Gaspard, 97 F.3d 1218, 1223-24 ___ _____________ _______ (9th Cir. 1996) and Shinault v. Cleveland County Bd., 82 F.3d ___ ________ ____________________ 367, 370-71 (10th Cir. 1996), cert. denied, 117 S. Ct. 740 ____________ (1997). -9- -9-