June 23, 1993

United States Court of Appeals

For the First Circuit

____________________

No. 92-2389

WILLIAM T. BRODERICK, ET AL.,

Plaintiffs, Appellees,

v.

FRANCIS ROACHE, ET AL.,

Defendants, Appellees.

____________________

ARTHUR MORGAN, JR.,

Defendant, Appellant.

____________________

ERRATA SHEET

Please make the following correction in the opinion in the above listed case released on June 18, 1993:

ARTHUR MORGAN, JR.,

Defendant, Appellant.

United States Court of Appeals

For the First Circuit

____________________

No. 92-2389

WILLIAM T. BRODERICK, ET AL.,

Plaintiffs, Appellees,

v.

FRANCIS ROACHE, ET AL.,

Defendants, Appellees.

____________________

ARTHUR MORGAN, JR.,

Defendant, Appellant.

____________________

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, 
U.S. District Judge
]

____________________

Before

 Torruella and Stahl, 
Circuit Judges
,

and Burns,* 
District Judge
.

____________________

Walter B. Prince
 with whom 
 was on brief for appellant.

James F. Lamond
 with whom 
Alan J. McDonald
 and 
McDonald, Noonan and Lamond
 were on brief for appellees William T. Broderick, et al.

____________________

June 18, 1993

____________________

____________________

*Of the District of Oregon, sitting by designation

STAHL, 
Circuit Judge
. 
In this appeal, defendant-appellant Arthur Morgan, Jr. ("Morgan") challenges the district court's ruling that he was not entitled to qualified immunity. Finding no error in the district court's ruling, we affirm.

I.

BACKGROUND

On May 12, 1990, plaintiffs-appellees the Boston Police Superior Officers Federation ("Federation") and William Broderick ("Broderick"), an employee of the Boston Police Department ("Department")
1:
Broderick has been employed by the Department since 1969, has been a police officer since 1977, and has been a sergeant since 1986.

 and an official of the Federation,
2:
Broderick served as Federation vice-president from January 1987, through December 31, 1988, and has served as Federation president since January 1, 1989.

All defendants other than the City are sued in their individual and official capacities.

This case, despite its pretrial status, has an extensive procedural history. The district court has already issued four previous memoranda and orders relative to various pretrial motions brought by the parties. 
See
 
Broderick
 v. 
Roache
, 751 F. Supp. 290 (D. Mass. 1990) (
inter
 
alia
Broderick
 v. 
City of Boston
, 755 F. Supp. 482 (D. Mass. 1991) (
inter
 
alia
Broderick
 v. 
Roache
Broderick
 v. 
Roache
, 803 F. Supp. 480 (D. Mass. 1992) (denying the City's motion for summary judgment on plaintiffs' claim against it under the MCRA).

At issue in this appeal is Morgan's involvement in four separate incidents wherein Broderick was disciplined, ostensibly for violating Department rules and regulations. Specifically, plaintiffs claim that Morgan, prompted by a desire to harass and retaliate against Broderick, abused the power of his position by developing and bringing charges against Broderick for his role in the four incidents. The particulars of these incidents, along with the implicated factual disputes, are delineated in the district court's thorough memorandum and order and need not be restated at length. 
See
 
Broderick
 v. 
Roache
, Civil Action No. 90-11500-MA, slip op. at 3-9 (D. Mass. Oct. 22, 1992) (hereinafter "
Broderick V
"). Instead, we summarize the incidents as follows:

1. In early 1989, Morgan received a complaint that Broderick was abusing the "release time" available to him as a Federation officer. "Release time" is time during which elected officials of the Federation are allowed to conduct Federation business during on-duty hours. Broderick asserts that Morgan departed from ordinary procedures in subsequently developing and bringing charges against him and recommending a disciplinary hearing. Among the departures from ordinary procedures alleged by Broderick is that, prior to the hearing, Morgan never afforded Broderick an opportunity to explain what happened and/or to accept a lesser form of discipline in order to avoid the hearing. 

2. In April 1989, Broderick received notice that he would be required to undergo a second disciplinary hearing on charges that he had violated Department rules and regulations during an arrest of Kathleen Bean the previous February. 
Broderick claims, 
inter
 
alia
, that Morgan departed from ordinary procedures in pressuring Bean into filing the charges, disregarding the recommendation of Broderick's commanding officer that the charges be classified as "unfounded" (which Morgan had never done before), and subsequently urging Broderick's commanding officer to approve charges with which he disagreed.

3. In December 1989, Morgan was present at an interrogation of Broderick conducted by Super-intendent Evans. The interrogation concerned certain remarks, critical of the Department, that were attributed to Broderick in an article appearing in the Boston Globe. Broderick essentially contends that Morgan exceeded his authority in attending the interrogation and improperly allowing the interrogation to extend beyond the scope of the Globe article.

4. In May 1990, Broderick received notice that he would be required to undergo a third disciplinary hearing on charges that he had violated Department rules and regulations while arresting Ezekiel Oluh the previous November. 
Broderick asserts, 
inter
 
alia
, that Morgan departed from ordinary procedures by ensuring that IAD, rather than Broderick's district, conducted the initial investigation into Oluh's complaint, and by becoming personally involved in the investigation. During the course of the IAD investigation, Oluh filed a second complaint against Broderick, asserting that Broderick had threatened him during the course of the criminal trial which followed the initial arrest. Broderick claims that Morgan departed from ordinary procedures by again disregarding the recommendation of Broderick's commanding officer that the charges in this second complaint be classified as "unfounded." He also contends that Morgan used this second set of charges to retaliate against him for seeking an injunction in a lawsuit brought by the Federation against the Department over civil service promotions.

On March 4, 1992, Morgan filed a motion for summary judgment, arguing that the doctrine of qualified immunity shielded him from liability. As we have noted, the district court, by memorandum and order dated October 22, 1992, rejected that argument. In so doing, the court found genuine issues of material fact regarding Morgan's motive in the actions he took against Broderick, and that the question of qualified immunity could not, therefore, properly be resolved by pretrial motion. 
See
 
Caro
 v. 
Aponte-Roque
, 878 F.2d 1, 2-4 (1st Cir. 1989) (genuine issues of material fact on the question of defendant's motive for taking adverse personnel action against plaintiff made proceeding to trial on question of qualified immunity appropriate).
5:
The court also has found, and the parties apparently agree, that this is a "mixed motive" case governed by 
Mount Healthy City Sch. Dist. Bd. of Educ.
 v. 
Doyle
, 429 U.S. 274 (1977). Under the 
Mount Healthy
 framework, Broderick bears the initial burden of proving that his conduct was constitutionally protected and that it was a "substantial" or "motivating" factor for the complained of adverse actions taken by defendants. 
See
 
id.
 at 287. If Broderick meets this burden, defendants must then prove "by a preponderance of the evidence" that they would have acted in the same way towards Broderick "even in the absence of the protected conduct." 
Id.
 

 It is from this ruling that Morgan now appeals.

 
 II.

DISCUSSION

Before discussing the merits of Morgan's appeal, we pause to note that which we need not resolve. In moving for summary judgment before the district court, Morgan neither challenged the court's ruling that Broderick's conduct is constitutionally protected
 nor contended that the rights at issue were not "clearly established," 
see
 
Harlow
 v. 
Fitzgerald
, 457 U.S. 800, 818 (1982), at the time the relevant incidents occurred. 
See
, 
e.g.
, 
Rodriguez-Pinto
 v. 
Tirado-Delgado
, 982 F.2d 34, 38 (1st Cir. 1993) (awarding defendant qualified immunity from damage claim because the implicated constitutional right was not clearly established 
at
 
the
 
time
 of the complained of acts). Moreover, Morgan expressly conceded to the district court that he could "be presumed to know that it was unlawful to retaliate against Broderick for Broderick's First Amendment protected conduct[.]" To the extent, therefore, that Morgan now is attempting to argue otherwise,
6:
Although it is not entirely clear, Morgan, citing, 
inter
 
alia
, 
Busby
 v. 
City of Orlando
, 931 F.2d 764, 774-75 (11th Cir. 1991) (the special disciplinary concerns of quasi-military organizations like police departments should be taken into account when evaluating the reasonableness of police officials' actions in enforcing regulations that delay an employee's access to public forum), does seem to be challenging the district court's determinations that Broderick's conduct is protected by the First Amendment and that the rights in question were clearly established at the time the relevant incidents occurred. Similarly, Morgan argues that the circumstances of this case "are sufficiently different from other cases in this Circuit involving First Amendment violations that Morgan could not have known his actions may have been considered unlawful." 

 he is precluded from so doing. 
See
, 
e.g.
, 
Dedham Water
 v. 
Cumberland Farms Dairy, Inc.
, 972 F.2d 453, 459 (1st Cir. 1992) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal.") (quoting 
McCoy
 v. 
Massachusetts Inst. of Technology
, 950 F.2d 13, 22 (1st Cir. 1991), 
cert.
 
denied
see
 
also
 
Buenrostro
 v. 
Collazo
, 973 F.2d 39, 44 (1st Cir. 1992) (refusing to allow appellants to assert on appeal a different basis for a qualified immunity defense than that argued to the district court).

see
 
Anderson
 v. 
Creighton
A. Intent and Qualified Immunity
 

Morgan's first argument, that the question of his intent is immaterial to the qualified immunity analysis, is premised upon a broad reading of certain language in 
Harlow
. Concerned that too many insubstantial civil rights claims were proceeding to trial and reacting particularly to the "substantial costs attend[ant to] the litigation of the subjective good faith of government officials[,]" 
see
 
id.
, 457 U.S. at 815-17, the 
Harlow
 Court overruled previous contrary authority
7:
Prior to 
Harlow
, a court conducting a qualified immunity inquiry had to determine whether the defendant official asserting a qualified immunity defense "knew or should have known" both of the right at issue and whether his/her conduct violated the constitutional norm. 
See
, 
e.g.
, 
Procunier
 v. 
Navarette
, 434 U.S. 555, 562 (1978).

 and jettisoned the "subjective" element of the qualified immunity defense, stating:

[W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id.
 at 817-18. In subsequent cases, the Court has reaffirmed that the "reasonableness" of the defendant official's actions should be determined according to an objective, rather than a subjective, standard. 
See
, 
e.g.
, 
Anderson
, 483 U.S. at 645 ("
Harlow
Malley
 v. 
Briggs
, 475 U.S. 335, 341 (1986) ("Under the 
Harlow
 standard . . . an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner."). 

Morgan argues that such language not only precludes us from inquiring into whether he himself knew whether the First Amendment rights at issue were clearly established at the time in question, but also prohibits us from examining the actual reasons for his actions. In other words, Morgan would have us read 
Harlow
 in such a way as to immunize him from liability even if he did intend to retaliate against Broderick for engaging in protected conduct.

The short answer to Morgan's contention is that, in a recent decision not cited by any of the parties, we rejected this very argument. 
See
 
Feliciano-Angulo
 v. 
Rivera
-Cruz
, 858 F.2d 40, 45-47 (1st Cir. 1988). To the extent that Morgan implicitly is inviting us to revisit our ruling in 
Feliciano
-Angulo
, we decline. It is settled that, "[i]n a multi-panel circuit, newly constituted panels, generally speaking, are bound by prior panel decisions on point." 
 v. 
Puerto Rico Aqueduct and Sewer Auth.
, No. 91-1602, slip op. at 6 n.3 (1st Cir. May 3, 1993). So it is here.

Moreover, we continue to believe that our ruling in 
Feliciano
-Angulo
 is sounder than the interpretation of 
Harlow
 urged by Morgan. Although we see no reason to engage in recapitulation here, we again note that the adoption of Morgan's argument "`would insulate officials from liability in all cases in which the substantive prescription makes the official's state of mind an essential component of the alleged constitutional violation.'" 
Feliciano-Angulo
, 858 F.2d at 46 (quoting 
Martin
 v. 
District of Columbia Metro. Police Dept.
, 812 F.2d 1425, 1433 (D.C. Cir.), 
en
 
banc
 
order
 
vacated
 
and
 
Section IV
 
and
 
dissenting
 
opinion
 
reinstated
, 824 F.2d 1240 (D.C. Cir. 1987)). For the reasons set forth in 
Feliciano-Angulo
, we think it clear that the Supreme Court intended no such result. 
See
 
id.
 at 46-47. Accordingly, we reject Morgan's argument that the district court erred in taking into consideration his intent while conducting its qualified immunity analysis.

B. The Objective Reasonableness of Morgan's Actions

Morgan's second argument, that he is entitled to qualified immunity because his actions in developing and bringing the charges against Broderick, absent any consideration of his intent/motive in so doing, were objectively reasonable, falls with our rejection of its condition precedent. Simply put, the objective reasonableness of Morgan's actions absent any consideration of his intent is irrelevant.
8:
We note that whether or not a disputed action violates clearly established law often depends on the intent with which it was performed. 
Auriemma
 v. 
Rice
, 910 F.2d 1449, 1453 (7th Cir. 1990) (citing 
Halperin
 v. 
Kissinger
, 807 F.2d 180, 184 (D.C. Cir. 1986) (Scalia, J.)), 
cert.
 
denied
, 111 S. Ct. 2796 (1991).

 If Broderick can show that an intent to retaliate against him for engaging in protected conduct was a "substantial" or "motivating" factor in Morgan's decision to act as he did, he has met his burden as articulated in 
Mount Healthy
. 
See
 
supra
 note 5. 
Of course, Morgan may still prevail in the face of such a showing if he can prove, by a preponderance of the evidence, that he would have taken the actions he did even if Broderick had not engaged in protected conduct. 
Id.
 Such argument is, however, for the factfinder and has no bearing upon our qualified immunity analysis. 

C. Genuine Issues of Material Fact

Finally, Morgan contends that the district court erred in finding that genuine issues of material fact on the question of his intent/motive precluded the entry of judgment in his favor. However, our review of the record, conducted in the light most favorable to Broderick, 
see
 
Cookish
 v. 
Powell
, 945 F.2d 441, 443 (1st Cir. 1991) (in examining whether the district court's denial of a summary judgment motion based upon qualified immunity is proper, we employ normal summary judgment principles and examine the record in the manner most hospitable to the party opposing the motion), persuades us that the court did not so err. Again, we note that the district court's memorandum and order thoroughly sets forth the genuine and material factual disputes relevant to the incidents at issue. 
 
See
 
Broderick
 V
, 

See
 
Mount Healthy
, 429 U.S. at 287.
9:
In so ruling, we are mindful that "[i]n cases where . . . the state of mind of one of the parties is crucial to the outcome of the case, resort to summary judgment is vested with more than the usual difficulty." 
Stepanischen
 v. 
Merchants Despatch Transp. Corp.
, 722 F.2d 922, 928 (1st Cir. 1983).

 Accordingly, we share the district court's conclusion that the question of Morgan's qualified immunity cannot be resolved at the summary judgment stage.
10: Morgan remains free, of course, to press his qualified immunity defense at a later point in the proceedings.

III.

CONCLUSION
 

Because the district court correctly ruled that Morgan's entitlement to qualified immunity cannot be decided prior to trial, we affirm its denial of Morgan's motion for summary judgment.

Affirmed. Costs to appellees.