Kelley v. City of Manchester        CV-94-358-M    09/23/96
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Manchester Police Patrolman's Association
and Edward J. Kelley,
        Plaintiffs

v.                                        Civil No. 94-358-M

City of Manchester, Peter Favreau,
Donald Vandal, and Louis B. Craig,
        Defendants


                          O R D E R


     The Manchester Police Patrolman's Association (the "Union")

and its president, Edward J. Kelley, bring this action against

the City of Manchester and three current or former high ranking

members of the Manchester Police Department ("MPD") pursuant to

42 U.S.C. § 1983 and New Hampshire common law.  Plaintiffs allege

that defendants used the MPD disciplinary system in an unlawful

and selective manner to retaliate against them for exercising

their First Amendment rights.  Additionally, plaintiffs claim

that in so doing, defendants also violated their substantive due

process rights under the Fourteenth Amendment.


     As originally filed, plaintiffs' complaint was a rambling

and vague collection of some 20 separate counts describing a

series of seemingly unconnected instances of alleged wrongdoing in the MPD. The court granted defendants summary judgment on all counts alleging violations of federally secured rights and declined to exercise supplemental jurisdiction over plaintiffs' state law claims. However, the court noted that:

> the pleadings in this case are so convoluted, vague, and on occasion, indecipherable, that, to ensure that plaintiffs are not prejudiced by the fogginess of the pleadings filed on their behalf, the court will delay entry of judgment in accordance with this order for thirty (30) days.

Order on Defendants' Motion for Summary Judgment (September 29, 1995), at 36-37. The court then afforded plaintiffs the opportunity to amend their complaint to clearly and concisely articulate the basis for their claims.

In response, plaintiffs filed an amended complaint which sets forth six counts against four defendants. Counts one through five allege deprivations of constitutionally guaranteed rights and are brought pursuant to 42 U.S.C. § 1983. The final count alleges that defendants defamed Kelley under New Hampshire common law. Defendants again move for summary judgment.

2

The pertinent facts underlying plaintiffs' claims and the applicable standard of review are discussed in detail in the court's September 29, 1995 order (the "Order") and need not be recited again. It is sufficient to note that only two events which led to Kelley's discipline are relevant to this proceeding: the so-called Boisvert/Colbath incident and the Union's demonstration at the homes of the mayor and various city aldermen. Both events, the discipline imposed upon Kelley as a result of his conduct with regard to those events, and the state court litigation that ensued are fully described in the court's earlier order. Order at 3-14.

## Discussion

As a preliminary matter, the court notes that each of the claims articulated by the Union (counts 1 through 5) is entirely derivative of the corresponding claim asserted by Kelley. That is to say, each of the harms which the Union says it suffered came as a result of defendants' alleged wrongful conduct towards Kelley (generally in the form of allegedly improper use of the MPD disciplinary system). Because Kelley is the Union's president, plaintiffs assert that defendants' alleged efforts to chill his First Amendment rights were also intended to intimidate

3

the Union.  Plaintiffs do not, however, allege any unlawful conduct on the part of defendants which was directed exclusively at the Union.

Reduced to its essence, then, plaintiffs' amended complaint alleges that Kelley was subjected to selective, unwarranted, and illegal disciplinary measures because of defendants' animosity towards him, both individually and as president of the Union. Plaintiffs also claim that Kelley was singled out for discipline because defendants wished to intimidate him and the Union, forcing them to adopt a less public, less adversarial, and more compliant role in the operation of the Manchester Police Department.

Defendants object to plaintiffs' characterization of their conduct.  They claim that each time Kelley was disciplined, discipline was both justified and consistent with the MPD's Rules and Regulations, to which plaintiffs agreed when the Union members ratified the collective bargaining agreement.[1]  More

---

[1]  Plaintiffs specifically agreed to abide by the MPD Rules and Regulations when they ratified the collective bargaining agreement with the City of Manchester.  That agreement provides:

**Rules and Regulations**  The Rules and Regulations of the

4

fundamentally, defendants assert that their actions were not motivated by an intent to interfere with the constitutional rights of either Kelley or the Union.

A.    Count 1 - Chilling of Right to Free Speech.

Having carefully reviewed the pleadings and other papers filed in this proceeding, as well as binding circuit precedent, the court is constrained to conclude that there exist genuine issues of material fact which preclude granting defendants' motion for summary judgment with regard to count 1.

Typically, in order to show that a deprivation of a First Amendment right has occurred, a plaintiff must, at a minimum, demonstrate that the defendant intended to inhibit speech protected by the First Amendment, Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir. 1994), and that the defendant's conduct had a chilling effect on the protected speech that was more than merely

---

Manchester, New Hampshire Police Department which are now in effect or as may be amended by the Police Commission shall be the prime governing factor in the conduct of all actions of all police officers and every police officer shall be thoroughly conversant with them.

Exhibit B to Defendants' First Motion for Summary Judgment, at para. 25.1.

"speculative, indirect, or too remote." Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989). Here, plaintiffs have merely alleged that "Kelley has suffered harm for which [defendants] are liable" and that defendants have "unlawfully impeded the Union's capacity to communicate, to have access to the courts and administrative agencies and to otherwise exercise its rights under the First and Fourteenth Amendments." Complaint, para. 36. Plaintiffs' "mere allegation that [they were] harmed does not amount to satisfying the causation requirement of a Section 1983 action." Sullivan, 888 F.2d at 4. See also Therrien v. Hamilton, 849 F.Supp. 110 (D.Mass. 1994) (A case involving substantially similar legal and factual issues, in which plaintiff, a police officer and head of the local police officer's union, failed to show either a potential or actual deprivation of First Amendment rights, leading the court to grant defendant's motion for summary judgment.).

Plaintiffs have failed to point to any genuine issue of material fact regarding an "actual chilling" of their protected speech. In fact, the record (largely in the form of exhibits filed by plaintiffs) demonstrates that plaintiffs were anything but intimidated by defendants' conduct. They continued to

vigorously represent the interests of union members and continued to bring their concerns to the attention of the news media. Absent an allegation of actual chilling of their rights to free speech, plaintiffs cannot satisfy the requirements of Sullivan v. Carrick.

In the public employment context, however, a disciplinary action against a public employee violates his or her First Amendment rights if (1) the conduct for which the employee was punished can be "fairly characterized as constituting speech on a matter of public concern," Connick v. Myers, 461 U.S. 138, 146 (1983), and (2) the interest of the employee in commenting on the matter of public concern outweighs the public employer's interest in promoting its efficiency by prohibiting the conduct. Pickering v. Board of Education, 391 U.S. 563, 568 (1968). Additionally, in order to prevail in a § 1983 action against an employer, the employee must, at a minimum, demonstrate that his or her protected conduct was a "substantial" or "motivating" factor in the defendant's decision to impose discipline. Mount Healthy City Board of Education v. Doyle, 429 U.S. 274, 287 (1977). The burden of persuasion then shifts to the employer to

show that it would have disciplined the employee even in the absence of the protected conduct.  Id.


    1.    <u>The Objective Reasonableness of<br>         Defendants' Conduct is not Relevant</u>.

Defendants claim that they are entitled to qualified immunity because their decisions to discipline Kelley on the occasions at issue in this case were objectively reasonable and entirely consistent with the MPD Rules and Regulations.  The Court of Appeals for the First Circuit has, however, unequivocally rejected that argument, holding that when intent is an integral element of a party's claim under the First Amendment, the objective reasonableness of the defendant's conduct is irrelevant.  <u>Broderick v. Roache</u>, 996 F.2d 1294, 1298 (1st Cir. 1993).  Instead, the court must focus its inquiry on the defendant's state of mind and determine whether the plaintiff has alleged facts which would permit a reasonable jury to conclude that the defendant's "intent to retaliate against him for engaging in protected conduct was a `substantial' or `motivating' factor" in the decision to discipline plaintiff.  <u>Id</u>. at 1299, citing <u>Mount Healthy</u>.  Because the defendant's subjective state of mind is a material fact, courts will be able to grant defendants summary judgment and/or hold that they are entitled to

8

qualified immunity in very few, if any, such cases. <u>See</u> <u>Broderick v. Roache</u>, 996 F.2d at 1299 n.9 ("In so ruling, we are mindful that `in cases where . . . the state of mind of one of the parties is crucial to the outcome of the case, resort to summary judgment is vested with more than the usual difficulty.'") (citation omitted). <u>See also</u>, <u>Carter v. State of Rhode Island</u>, 68 F.3d 9, 12 (1st Cir. 1995) ("Determining the presence or absence of discriminatory "intent" based on evidentiary proffers at summary judgment entails a quintessential <u>factual</u> assessment.") (emphasis in original); <u>Penney v. Town of Middleton</u>, 888 F.Supp. 332, 343 (D.N.H. 1994) ("The essence of [defendant's] argument is that clearly established law did not prohibit him from engaging in the conduct described in the complaint and his motives for undertaking the conduct cannot be considered in determining whether he is entitled to qualified immunity. . . . [However,] if, as [plaintiff] alleges, [defendant] purposely retaliated against him because he had [engaged in protected speech, defendant] may not claim qualified immunity for his acts simply because the acts might have been lawful if his motives had been pure.").[2]

---

[2]    In light of the holding in <u>Broderick v. Roache</u>, <u>supra</u>, the facts which support defendants' claim that their conduct was "objectively reasonable" are, at this juncture, irrelevant.

9

2.  <u>Defendants' Subjective Intent in Disciplining</u>
    <u>Kelley is a Genuine Issue of Material Fact</u>.

While there is some evidence of general animosity between Kelley and defendants, it is, at best, a tenuous basis from which a reasonable trier of fact could conclude that defendants' actions were motivated by a desire to retaliate against Kelley for his protected speech.  As noted in <u>Rakovich v. Wade</u>, 850 F.2d 1180 (7th Cir.), <u>cert. denied</u>, 488 U.S. 968 (1988):

> Importantly, those prior disagreements [between the parties] are not independently significant . . . They are significant only as they may relate to the officers' state of mind.  <u>As to state of mind, the probative value of these disagreements is, however, weakened when the nature of the cause of action is reiterated: retaliation for the exercise of first amendment rights, and not simply retaliation because the officers had a generic dislike of [plaintiff]</u>.

_____

Accordingly, it would seem to be of little moment that: (1) Kelley and the Union agreed to be bound by the Rules and Regulations of the MPD, including the restrictions on speaking to the public on matters relating to certain MPD affairs (i.e., seemingly voluntarily waiving certain First Amendment rights); (2) the New Hampshire Superior Court and the PELRB concluded that defendants did not act illegally, <u>ultra vires</u>, or in a discriminatory manner toward Kelley when they disciplined him; (3) a reasonable person might well have concluded that Kelley was not speaking on matters of public concern when he violated the MPD rules against dissemination of certain information to the public; and (4) a reasonable person might well have concluded that Kelley's interest in speaking on those matters was outweighed by the MPD's interest in maintaining order, discipline, and efficiency.

10

<u>Id</u>. at 1193 (emphasis added).

Nevertheless, viewing the record liberally in plaintiffs' favor, and applying binding circuit precedent, the court is constrained to hold that the evidence of defendants' general animosity toward Kelley, coupled with the fact that they disciplined him for having engaged in protected speech (despite the fact that such discipline appears to have been objectively reasonable and consistent with the MPD Rules and Regulations), are sufficient to permit a reasonable jury to conclude that defendants' conduct was motivated by a desire to retaliate against Kelley. <u>See, e.g.</u>, <u>Broderick</u>, 996 F.2d at 1299 (holding that defendant's harsh and allegedly disparate treatment of the plaintiff created a genuine issue of material fact as to whether defendant was motivated by a desire to retaliate against plaintiff for exercising his First amendment rights.).

Accordingly, the court holds that plaintiffs have met their burden under <u>Mount Healthy</u>, <u>supra</u>. Defendants' motion for summary judgment with regard to count 1 of the complaint is denied. For essentially the same reasons, defendants are not entitled to judgment as a matter of law with regard to count 2.

11

B.    Count 3 - Substantive Due Process.

The core of count 3 is plaintiffs' assertion that the "selective and calculated use of the police disciplinary system against Kelley and the Union to thwart the plaintiffs' constitutional rights of expression is a violation of plaintiffs' due process rights."  Complaint, para. 44.  As the court of appeals for this circuit has noted:

> [A] substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible.  Stating the proposition does not cabin it very well.  It has been said, for instance, that substantive due process protects individuals against state actions which are "arbitrary and capricious," or those which run counter to "the concept of ordered liberty," or those which, in context, appear "shocking or violative of universal standards of decency."
>
> . . . Word play aside, we agree with Judge Friendly that, in the circumscribed precincts patrolled by substantive due process, it is only when some basic and fundamental principle has been transgressed that "the constitutional line has been crossed." . . . [A]lthough the yardstick against which substantive due process violations are measured has been characterized in various ways, we are satisfied that, before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscious-shocking.

12

Amsden v. Moran, 904 F.2d 748, 753-54 (1st Cir. 1990) (citations omitted) (emphasis in original), cert. denied, 498 U.S. 1041 (1991).

Plaintiffs have failed to allege any facts which, if credited as true, are sufficiently egregious, outrageous, or conscious-shocking to describe a deprivation of substantive due process. Moreover, the factual allegations upon which plaintiffs do rely in support of their substantive due process claim have been reviewed by several judicial or quasi-judicial bodies in the past. On each occasion that a decision on the merits was reached, the reviewing authority concluded that defendants had not acted unlawfully, arbitrarily, or capriciously. See Order at 9-12, 31-32.

For the foregoing reasons, and for the reasons articulated in the court's prior order, defendants are entitled to judgment as a matter of law with regard to count 3.

C.   Count 4 - Corruption/Equal Protection.

In count 4 of their complaint, plaintiffs allege that defendants "initiate[d] actions or refrain[ed] from taking

13

actions which were designed to benefit defendants and provide favored treatment of one segment of society versus another segment of society." Complaint, para. 47. While such allegations certainly sound ominous, they lack the functional specificity necessary to describe a cognizable claim. Later in their amended complaint, however, plaintiffs add a measure of precision, alleging that:

> plaintiffs were denied equal protection of the law under the United States Constitution and the Fourteenth Amendment of the U.S. Constitution in that Kelley, as Union President and a patrolman with the Manchester Police Department, was selectively treated and singled out by the defendants in the discriminatory enforcement of the MPD disciplinary procedures for the sole purpose of punishing and further chilling plaintiffs from exercising their constitutionally protected rights of speech and assembly.

Amended Complaint, para. 50.

As noted in the court's prior order, plaintiffs do not allege that defendants failed to adhere to any of the procedural rules set forth in the MPD's Rules and Regulations with regard to the disciplining of Kelley. Instead, they focus exclusively upon the claim that, although applied in a procedurally correct fashion, the MPD Rules and Regulations have been selectively

14

enforced against him, in violation of his constitutionally guaranteed right to equal protection of the laws.

The Court of Appeals for the First Circuit has held that liability for an alleged deprivation of equal protection will attach only upon:

> proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Yerardi's Moody St. Restaurant & Lounge, Inc. v. Board of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989) (citations omitted).

Turning to the first element of the articulated test, it is clear that Kelley has failed to allege facts showing that he has been selectively treated. To be sure, Kelley has a long history of disciplinary citations over the course of his tenure with the MPD. From November of 1983 (predating his election as Union president) through June of 1992, Kelley's disciplinary record shows at least 36 separate charges for violations of the MPD Rules and Regulations, ranging in severity from relatively minor

15

(e.g., failure to turn in paperwork in a timely fashion and failure to submit legible reports) to serious (e.g., unnecessary force (on 2 occasions), neglect of duty, and incompetence). That the MPD deemed it necessary to discipline Kelley for his failure to abide by the department's rules and regulations does not establish that Kelley was singled out for selective treatment; it's at least equally plausible that Kelley's performance of duty placed him among the worst rather than the best police officers. Stated somewhat differently, the mere fact that Kelley is a vocal representative of the Union can hardly insulate him from discipline for actual violations of the MPD Rules and Regulations.

If Kelley (or any other officer) violates the MPD rules, he must expect to be disciplined. Of course, he can and should expect that he will be treated fairly and in a manner that is consistent with how others are treated. But, the record before the court fails to suggest that Kelley was treated any differently than other officers on the MPD force. To be sure, he has been the subject of numerous disciplinary actions, and the record could facially support at least an allegation that there was animosity between Kelley and some of the defendants. Those

16

facts alone do not, however, support Kelley's claim that defendants selectively enforced the MPD Rules and Regulations against him or, more to the point, that he was the subject of any form of unlawful discrimination or equal protection violation.

In order to survive defendants' motion for summary judgment, plaintiffs may not simply assert "an inequity and tack[] on the self-serving conclusion that the defendant was motivated by a discriminatory animus. The alleged facts must specifically identify the particular instance(s) of discriminatory treatment and, as a logical exercise, adequately support the thesis that the discrimination was unlawful." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990). Kelley provides only opinion and bold, unsupported conclusions in support of his claim that he has been selectively disciplined for violating the MPD Rules and Regulations. In short, he has failed to point to specific instances in which he claims he was subjected to discipline while other, similarly situated police officers were spared discipline for substantially similar conduct or offenses. See, e.g., Gillard v. Norris, 857 F.2d 1095, 1101 (6th Cir. 1988) (Plaintiff, a state corrections officer who claimed that he was selectively disciplined in violation of his right to equal

17

protection "failed to demonstrate that the defendants treated similarly situated individuals in a disparate manner, and [] therefore failed to state a cause of action for denial of equal protection."); Black v. City of Auburn, 857 F.Supp. 1540, 1549 (M.D.Ala. 1994) (Police officer failed to demonstrate that his discipline violated his right to equal protection. "In sum, there is neither any evidence that other similarly situated officers were treated differently nor is there any evidence that the prosecution or investigation was the product of constitutionally improper motives."); Gates v. Sicaras, 706 F.Supp. 169, 174 (D.Conn. 1989) (In order to prevail on his equal protection claim, the plaintiff (a former city police officer) "must establish that he was in fact singled out for special treatment and that defendants took the action intentionally to discriminate against him because of his membership in a constitutionally identifiable group. This plaintiff has not done. Plaintiff's argument would give every person who claims harassment by a government official a cause of action under the equal protection clause. However, the equal protection clause only protects individuals against invidious discrimination.").

18

While plaintiffs allege that defendants subjected Kelley to discipline which was "unprecedented" those allegations are legally insufficient to form the basis of an equal protection claim. For example, paragraph 21 of the amended complaint alleges that "there is no history in the MPD of bringing an officer up on formal charges for late paperwork." First, plaintiffs concede that other officers have been disciplined for failing to submit timely paperwork. The focus of their allegation appears to be on the fact that Kelley was subjected to "formal charges" for his violation. Unfortunately, plaintiffs fail to state precisely what they mean by formal charges (as distinguished from "written reprimands"), nor do they explain the legal significance of the distinction. And, more importantly, it appears from the complaint and plaintiffs' other papers that the officer charged with the violation controls whether his discipline is handled informally (i.e., written reprimand) or formally (i.e., hearing). See Amended Complaint, para. 15. The mere fact that Kelley might have been the first MPD officer to request a formal hearing after being cited for failing to submit timely paperwork hardly establishes that he has been selectively disciplined.

As another example of the "unprecedented" disciplinary measures taken against Kelley, plaintiffs point to the fact that he was charged with "discourtesy" (Amended Complaint, para. 19) and "insubordination" (Amended Complaint, para. 29). They claim that no other MPD officer has ever been charged with those offenses and, therefore, sanctioning Kelley for such conduct was unlawful, selective, and discriminatory. As noted above, however, claims of that sort, without more, fail to state a viable cause of action. Plaintiffs have neglected to allege even a single instance where another MPD officer engaged in similar conduct but, unlike Kelley, escaped discipline. Certainly, an insubordinate and discourteous officer ought to be disciplined and ought not to be held immune simply because most officers are neither insubordinate nor discourteous.

Standing alone, the fact that Kelley may have been the first MPD officer disciplined for discourtesy or insubordination is legally insignificant; he might well have been the rare officer who engaged in activity of that type sufficiently serious to warrant discipline. The first officer charged with a violation of a particular provision of the MPD Rules and Regulations does not, without more, have a claim that his or her equal protection

rights are being violated.  In short, plaintiffs have failed to plead the requisite connection between Kelley's alleged "selective" treatment and a violation of the equal protection clause of the Constitution.  They simply recite a number of factual anecdotes and then conclude that defendants' motivation in disciplining Kelley was unlawful and discriminatory.

As the Court of Appeals for the First Circuit has repeatedly held, more than mere conclusory statements and unsupported allegations are necessary in order to raise a triable, genuine issue of material fact.  Plaintiffs cannot rely exclusively on "subjective characterizations" or "unsubstantiated conclusions," Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990), or bald assertions, or "opprobrious epithets."  Chongris v. Board of Appeals of Andover, 811 F.2d 36, 37 (1st Cir.), cert. denied, 483 U.S. 1021 (1987).  Accordingly, the court holds that defendants are entitled to summary judgment with regard to Count 4 of plaintiffs' complaint.

D.    Count 5 - Municipal Liability.

A municipality cannot be held vicariously liable under § 1983 for the wrongful acts of its employees.  Collins v. City

21

of Harker Heights, 503 U.S. 115, 121 (1992). A municipality may be liable, however, when one of its employees acts pursuant to a municipal custom or policy and, in so doing, violates someone's constitutional rights. Id. Municipal liability attaches under § 1983 only when the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the body's officers." Monell v. New York City Department of Social Services, 436 U.S. 658, 690 (1978). So, in order to prevail on their § 1983 claim against the City of Manchester, plaintiffs must show a direct causal connection between municipal conduct and a constitutional deprivation. See, e.g., Oklahoma City v. Tuttle, 471 U.S. 808, 824-25 n.8 (1985) (requiring an "affirmative link" between the municipal policy and the alleged constitutional deprivation.).

Again, however, to avoid summary judgment, plaintiffs must support their claims with something more than mere subjective characterizations or unsubstantiated conclusions. Plaintiffs have failed to carry that burden. In the absence of some indication of municipal direction via a policy, practice, or custom, and given that a respondeat superior cause of action is

not cognizable under § 1983, the City is entitled to summary judgment with regard to count 5 of plaintiff's complaint.

Moreover, defendants Favreau, Craig, and Vandal are not liable in their officials capacities for any alleged constitutional deprivations. Because "official capacity suits generally represent only another way of pleading an action against an entity for which an officer is an agent," Brandon v. Holt, 469 U.S. 464, 472 n.21 (1984), and because plaintiffs have failed to show that their alleged injuries are the product of any municipal custom or policy, defendants are entitled to summary judgment in their official capacities. Although they claim that the individual defendants "possess[ed] final authority to establish municipal policy with respect to matters effecting the administration of the MPD," Amended Complaint at para. 53, plaintiffs have failed to alleged sufficient facts from which a reasonable jury could conclude that some policy existed, that the policy resulted in constitutional violations, or that they suffered harm as a result of any such municipal custom or policy adopted by defendants. See generally, Penney v. Town of Middleton, 888 F.Supp. at 340-41.

23

The claims in counts 1, 2, and 6 alleged against defendants Craig, Favreau, and Vandal in their individual capacities shall, however, remain.

E.    Count 6 - Defamation.

With regard to the final count of plaintiffs' complaint, defendants simply assert that, because they believe plaintiffs have failed to state any viable federal causes of action, the court should decline to exercise supplemental jurisdiction over Kelley's state defamation claim.  They have not addressed the merits of Kelley's claims.

Because plaintiffs may proceed on counts 1 and 2, and because defendants have provided no basis for finding that they are entitled to judgment as a matter of law with regard to Kelley's state law claim, the court will exercise its supplemental jurisdiction over count 6 and permit plaintiffs to present their claims to a jury.

### Conclusion

While many of their factual allegations certainly sound ominous and sinister, plaintiffs have, in large measure, failed

24

to link those allegations to cognizable causes of action. Nevertheless, recognizing that the requisite elements of plaintiffs' various claims might well be buried in the volumes of largely irrelevant facts and argument, the court has spent considerable time sifting through the record in an effort to piece together the essential components of viable legal claims. Based upon that review, and reading the pleadings and circuit precedent liberally in plaintiffs' favor, the court holds that plaintiffs are entitled to present the arguments raised in counts 1, 2, and 6 to a jury.

For the foregoing reasons, defendants are entitled to judgment as a matter of law on counts 3, 4, and 5 in plaintiffs' amended complaint. Defendants Favreau, Craig, and Vandal are also entitled to summary judgment with regard to all claims against them in the official capacities. With regard to counts 1, 2, and 6 (against defendants in their individual capacities), however, there exist genuine issues of material fact and summary judgment is inappropriate. Defendants' second motion for summary judgment (document no. 45) is granted with regard to counts 3, 4, and 5. It is denied with regard to counts 1, 2, and 6.

25

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 23, 1996

cc:  Kenneth J. Gould, Esq.
     Joseph H. Groff, III, Esq.
     Michael B. O'Shaughnessy, Esq.